25 F.3d 1053
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 In the Matter of: S & P, INCORPORATED, Debtor,
Appeal of S & P, INCORPORATED.
 No. 93-3066.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 15, 1994.
Decided May 6, 1994.
 
 1
 Before COFFEY and FLAUM, Circuit Judges, and MORAN, Chief District Judge*.
 
 ORDER
 
 2
 S & P, Inc. (S & P) brought a malpractice suit against the law firm representing it in chapter 11 proceedings, alleging that it was evicted without notice and forced to close and liquidate its restaurant business as a result of the law firm's misconduct. The bankruptcy court found that the firm had committed professional malpractice and awarded S & P damages in the amount of $14,391.00. S & P filed a motion to amend the bankruptcy court's findings and judgment, maintaining that an erroneous finding of fact led the court to conclude that S & P could not successfully reorganize, thereby substantially reducing S & P's award of damages. The bankruptcy court denied this motion and S & P appealed to the district court. The district court affirmed the decision of the bankruptcy court and this appeal followed. We reverse.
 
 
 3
 Appellant S & P is an Indiana corporation which formerly did business as the Big Bear Restaurant. The Big Bear Restaurant was located at the Town & Country Shopping Center in Mishawaka, Indiana. In 1986, S & P opened a second restaurant in Elkhart, Indiana, named Chef Willie's. Chef Willie's was an unsuccessful venture; its door were closed within a year. However, the Big Bear Restaurant remained profitable. S & P employed defendants-appellees, Attorney Daniel Pfeifer and his firm, Sweeney, Pfeifer & Blackburn (Pfeifer), in early 1987, to represent its interests in various legal matters. In August of that year, with unresolved tax and rent difficulties, S & P filed for bankruptcy under chapter 11.
 
 
 4
 S & P planned to continue operating the Big Bear Restaurant in order to satisfy its pre-petition obligations. However, Pfeifer failed to inform S & P that, pursuant to section 365 of the Bankruptcy Code, 11 U.S.C. Sec. 365, S & P was required to assume the lease within sixty days of the date of the order of relief. Under Sec. 365, if a debtor fails to assume or reject the lease within sixty days, or petition the court for additional time, the debtor must immediately surrender the property to the lessor. Due to Pfeifer's failure to inform S & P of this requirement, or to take any steps to meet the requirement, S & P was required to surrender the restaurant. The landlord gave S & P five days to vacate the premises, forcing the Big Bear to cease operations and liquidate its inventory. Accordingly, S & P was denied the opportunity to reorganize at that location and had no time to explore alternative locations.[1] Having failed to assume the lease, S & P also lost its option to renew the lease in January 1988. Shortly thereafter S & P retained new counsel and filed its malpractice suit against Pfeifer.
 
 
 5
 The bankruptcy court ruled that Pfeifer breached its duty to S & P by failing to follow proper procedures or adequately advise its client concerning the bankruptcy proceeding. The court stated that the true measure of damages was the value of the Big Bear Restaurant as an ongoing concern. In calculating damages, it focused on September 1, 1987 to January 31, 1988, the five-month period that S & P operated the Big Bear as debtor-in-possession. The court found that S & P did not sustain its burden of proof on the possibility of a successful reorganization and therefore awarded no damages for loss of the restaurant itself. The court did award $11,000 in damages, plus pre- and post-judgment interest. This reimbursed S & P for $5,000 paid to Pfeifer as a retainer, $2,000 in inventory it was forced to give away in its haste to vacate the premises, and $4,000 spent on new menus ordered shortly before the restaurant was required to close. S & P's motion to amend the judgment was denied.
 
 
 6
 Plaintiff agrees with the bankruptcy court in most respects. It accepts that the true measure of damages is the value of the Big Bear Restaurant as an ongoing concern; that, in calculating damages, the proper focus should be on the five-month period that S & P operated as debtor-in-possession; and that the court followed a proper methodology in calculating damages. It contests only the accuracy of certain figures that were used in formulating the damages calculations. These are findings of fact which we review for clear error. In re Mann, 907 F.2d 923, 926 (7th Cir.1990). Under the clear error standard, the reviewing court asks whether the trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence. Ratliff v. City of Milwaukee, 795 F.2d 612, 617 (7th Cir.1986). S & P further maintains that it was the bankruptcy court's reliance on the flawed damages calculations which led it to conclude that a successful reorganization was not possible and that this constituted error. This raises a mixed question of fact and law which is also subject to the "clearly erroneous" standard of review. Schiro v. Clark, 963 F.2d 962, 974 (7th Cir.1992), aff'd, No. 92-7549, 1994 WL 9939 (Jan. 19, 1994).
 
 
 7
 On December 7, 1993, Pfeifer moved to dismiss this appeal under Rule 10(b)(2) of the Federal Rules of Appellate Procedure. At oral argument, counsel for Pfeifer acknowledged that Rule 10(b)(2) was not applicable to a case on appeal before this court pursuant to 28 U.S.C. Sec. 158(d), and that Rule 6(b)(2)(ii) was applicable instead. He contended, however, that even under Rule 6(b)(2)(ii), S & P's appeal should be dismissed because the record is incomplete. Pfeifer asserts that because S & P's attack on the judgment below is limited to whether certain findings of fact were erroneous, S & P should have provided a transcript of the testimony bearing upon the factual issues involved. Pfeifer argues that failure to submit a complete record of the evidence relating to those factual findings makes this court's task impossible. Accordingly, Pfeifer moves to dismiss the appeal.
 
 
 8
 Rule 6(b)(2)(ii) provides, in relevant part, that
 
 
 9
 [w]ithin 10 days after filing the notice of appeal, the appellant shall file with the clerk possessed of the record assembled pursuant to Bankruptcy Rule 8006, and serve on the appellee, a statement of the issues to be presented on appeal and a designation of the record to be certified and transmitted to the clerk of the court of appeals. If the appellee deems other parts of the record necessary, the appellee shall, within 10 days after service of the appellant's designation, file with the clerk and serve on the appellant a designation of additional parts to be included....
 
 
 10
 Fed.R.App.P. 6(b)(2)(ii) (emphasis added). We think that the record contains all evidence necessary for a meaningful review of the bankruptcy court's allegedly erroneous factual findings. Under the terms of Rule 6(b)(2)(ii), the appellee had the burden of designating any additional portions of the record it deemed necessary for appellate review. The appellate rules provide a mechanism for the appellee to correct any alleged deficiencies in the record and, after failing to utilize this mechanism, Pfeifer cannot now complain about any omissions.
 
 
 11
 The evidence is sufficient for meaningful review because plaintiff's contentions are narrow in scope: it contends that the bankruptcy court quite properly relied upon financial data presented by the parties but that it misread or did not fully appreciate that data and therefore made two erroneous factual findings. One error was the finding that the cash on hand at the end of January 1988 was $16,152.63, a figure obviously obtained from an exhibit setting forth the results of business operations that month. But the $16,152.63 actually was the cash figure for the beginning of the month, not the end, when the figure was $20,576.13. The use of the wrong figure caused the court to determine that from September 1, 1987 to January 31, 1988 plaintiff accumulated $14,697.32 in cash, when the accumulation should have been $19,120.82.
 
 
 12
 Whether or not that modest difference would have any real impact on S & P's ability to reorganize, we cannot say. The other error is, however, far more significant. The bankruptcy court erred by using the wrong monthly rent figure in its damages calculations. The court stated that "[t]he evidence clearly shows that S & P was paying $2,200.00 per month under the lease. However, there is not sufficient evidence in the record to support a finding that S & P was paying more than $2,200.00 per month." Accordingly, the court used $2,200 as the monthly rent figure in its calculations. S & P maintains that this was clear error because the lease provided for percentage rent in addition to the $2,200 base rent. It contends that the bankruptcy court overlooked evidence as to the total amount of rent paid during the relevant five-month period, and that this evidence shows that both base rent and percentage rent were paid.
 
 
 13
 S & P's lease provided for payment of base rent of $2,425.00 per month, $225.00 of which was prepaid by the security deposit. In addition, it was required to pay percentage rent in the amount of 6% of the excess of annual gross sales and income over a volume of $300,000.00. S & P submitted monthly reports of the operation of the business for each month it operated the Big Bear Restaurant as debtor-in-possession: September 1987 through January 1988. These reports show rent and lease payments in the amounts of $6,290.89 for September; $5,651.28 for October; $2,491.48 for November; $8,761.42 for December; and $2,971.54 for January. (See Plf.Exh. 12-16.) According to these reports, the total amount of rent paid from September 1987 to January 1988 was $26,166.61. We note, however, that this includes both building and equipment rent. Schedule I of Pfeifer's Exhibit B lists the amount of equipment rent paid during this period as $598.00. To calculate the amount of building rent paid, we need only subtract the $598.00 in equipment rent from the $26,166.61 total, for $25,568.61, or $5,113.72 per month. Exhibit B, which is defendant's exhibit, shows an average monthly building rent expense of $5,047.40.
 
 
 14
 The bankruptcy court relied on the accuracy of Exhibits 12 through 16, using the cash on hand and the total cash receipts figures in its damages calculations. It is therefore difficult to understand why the court refused to take the monthly rental amount from these documents, why it ignored defendant's Exhibit B, and why the court stated that there was insufficient evidence to support a finding that S & P was paying more than $2,200.00 in rent. The court instead relied on three checks for $2,200.00 which S & P's landlord had returned to Pfeifer after S & P failed to assume the lease. The court reasoned that if percentage rent had been paid, checks for that amount would have also been returned. However, these checks were not introduced by S & P to establish the amount of rent paid. Rather, it introduced these checks to demonstrate that Pfeifer was attempting to hide its malpractice. S & P maintains that it did not introduce evidence of the percentage rent because it did not think it was necessary to do so. At oral argument, counsel for S & P stated that no evidence was introduced to support any of the figures in Exhibits 12 through 16. Yet the court relied on these figures in its calculations, save the amount listed for rent.
 
 
 15
 We think the court's finding as to the amount of monthly rent paid is clearly erroneous. The court's finding is contradicted in the very same documentary evidence it employed for its damages calculations. Exhibits 12 through 16, and Exhibit B, establish that S & P was paying between $5,047.40 and $5,113.72 in monthly building rent. This makes sense, given the $2,200.00 base rent and the amount of percentage rent required. The bankruptcy court did not dispute the accuracy of S & P's monthly reports. In fact, it relied on them to calculate damages. Under these circumstances, it was error for the court to ignore the figures for the amount of rent paid.
 
 
 16
 Finally, S & P contends that, due to the above errors, the bankruptcy court erroneously concluded that S & P would suffer a net loss during the five-year reorganization period. S & P alleges that had the court employed the proper figures in determining damages it would have found that S & P would have a net income of $169,569.60 over the five-year period. S & P maintains that this amount would be sufficient both to pay off S & P's secured and priority creditor's claims (totalling $71,318.03) and to produce a confirmable plan of reorganization. We leave it to the bankruptcy court to determine on remand whether reorganization would have been possible and whether S & P's damages calculations are accurate, using the proper figures for the cash on hand on January 31, 1988, and the correct amount of rent paid. Should the court determine that reorganization would have been possible, we agree with the bankruptcy court that S & P should be awarded damages equal to the value of the Big Bear Restaurant.
 
 
 17
 We deal with one more matter. The district court sitting as an appellate tribunal, only briefly addressed the merits because it concluded that the contentions raised there, which are the same as the contentions raised here, had been waived by failure to pursue them in the bankruptcy court. We disagree. A party cannot dispute a court's findings before they are made. That party may thereafter move to amend, but such a motion is not required. Pursuant to Rule 7052, F.R.B.P., Rule 52(b), F.R.Civ.P., governs:
 
 
 18
 When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment.
 
 
 19
 For the reasons stated above, the bankruptcy court's decision must be reversed and the case remanded for reconsideration of damages. It is so ordered.
 
 
 
 *
 Honorable James B. Moran, Chief Judge of the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The bankruptcy court found that Pfeifer failed to advise S & P both of the necessity to take some action to assume the lease and of the landlord's pending motion to surrender. Thus, during the five months S & P operated the Big Bear Restaurant as debtor-in-possession it had no reason to believe it should be investigating other locations